# STATE OF CONNECTICUT *v.* MARK STRICKLAND
## (13962)

Dupont, C. J., and Foti and Freedman, Js.

Argued September 18—decision released November 28, 1995

*Deborah DelPrete Sullivan,* assistant public defender, for the appellant (defendant).

*Lawrence J. Tytla,* assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of the trial court revoking his probation, pursuant to General Statutes § 53a-32, after the trial court concluded that the defendant had violated the terms of his probation. The defendant claims that the trial court improperly (1) denied his pro se motion to dismiss the violation of probation charges, (2) found the defendant in violation of probation, and (3) permitted him to exercise his right to waive counsel and to represent himself with standby counsel. We affirm the judgment of the trial court.

In August, 1985, the defendant pleaded guilty to a count of sexual assault in the first degree on each of two pending cases. On September 23, 1985, the court, *Hendel, J.,* sentenced the defendant to a term of twenty years incarceration with execution suspended after eight years, followed by five years of probation. On July 27, 1990, due to credits earned, the commissioner of correction (commissioner) released the defendant from custody. The defendant's five year probationary period commenced on that date. On August 7, 1990, the defendant reviewed the conditions of his probation, including the requirement that he refrain from violating the criminal laws of this state, and signed a form outlining those conditions. General Statutes § 53a-30 (a) (7).

On February 28, 1992, the defendant was arrested and charged on two separate informations with one count of burglary in the third degree and one count of possession of narcotics. The defendant was incarcerated pending disposition of those charges. On July 27, 1992, the defendant pleaded guilty to both charges and

admitted that he violated his 1985 imposed probation, pursuant to General Statutes § 53a-32. The court, *Stanley, J.*, sentenced the defendant to consecutive imprisonment terms of three years for the burglary and two years for possession of narcotics, a total effective sentence of five years. The court did not impose additional punishment for the defendant's violation of his probation. Instead, the court determined that the defendant was in his second year of the five year probationary period imposed in 1985, set to expire in 1995, and stated that "[h]e is to remain on probation once he is released under the original terms and conditions."

On March 2, 1993, after serving approximately thirteen months of the five year sentence ordered on July 27, 1992, the defendant was released to the Fellowship House in Groton under the provisions of the supervised home release program. As a matter of law, a prisoner who is released from incarceration to the supervised home release program remains subject to the supervision of the department of correction and remains in its legal custody as if he were incarcerated. *Asherman* v. *Meachum*, 213 Conn. 38, 48, 566 A.2d 663 (1989).

At some time during the month of October, 1993, the defendant was arrested and charged with burglary in the third degree, possession of burglary tools and larceny in the sixth degree. This event caused the defendant to be removed from the supervised home release program and returned to incarceration. On October 25, 1993, the defendant was brought before the court in New London to be arraigned on the new charges. At some point during or after the arraignment, as the sheriff escorted the defendant from the courtroom toward the lockup area, the defendant broke from the custody of the sheriffs and attempted to escape. The sheriffs apprehended the defendant before he reached the backdoor. Subsequent to his presentment on October 25, 1993, the defendant was held at the Radgowski Correctional Cen-

ter in Montville. On November 17, 1993, the correctional facility conducted a formal count of inmates and determined that the defendant had escaped. On November 24, 1993, uniformed police officers captured the defendant in Sprague, after he resisted their efforts to take him into custody. The officers conducted a search, incident to the arrest, and found in the defendant's possession a set of car keys that belonged to an automobile found in the vicinity of the defendant's capture. The defendant acknowledged stealing the automobile from a driveway in New London shortly after his escape from prison. The defendant also admitted to altering the license plate on the automobile.

As a result of these incidents, the defendant was arrested on a warrant[1] charging him with violating the probation imposed in 1985, which had commenced on July 27, 1990. On August 1, 1994, prior to the start of a violation of probation hearing, the defendant made a motion to dismiss the violation of probation charge. The court, *Parker, J.*, denied the defendant's motion.[2] The revocation hearing proceeded on August 1 and 3, 1994, and, on the latter date, the court found the defendant to be in violation of his probation. On August 8, 1994, the court sentenced the defendant to twelve years, the suspended portion of the defendant's original sentence ordered in September, 1985.

---

[1] Subsequently, a long form information was filed setting forth the following events: the defendant's attempted escape from the courtroom, the defendant's escape from prison, the defendant's wrongful appropriation of an automobile and the defendant's resistance of arrest. The information alleged each of these incidents to be a violation of the standard condition of probation that the defendant, while on probation, refrain from violating the criminal laws of this state. General Statutes § 53a-30 (a) (7).

[2] The defendant's first pro se motion to dismiss the violation of probation charge was denied after a hearing by *Purtill, J.*, on June 17, 1994. Subsequently, Judge Purtill recused himself because he had signed the violation of probation arrest warrant. Judge Parker indicated that he would disregard Purtill's denial and rehear the motion.

I

The defendant first claims that the trial court improperly denied his pro se motion to dismiss the violation of probation charges. The defendant predicated his motion on the argument that, as a matter of law, an individual cannot be simultaneously in the custody of the commissioner of correction and on probation. In presenting his motion, the defendant argued that at the time of the alleged underlying offenses set forth in the long form information, i.e., during the months of October and November, 1993, he remained in the custody of the commissioner by virtue of his retention in the supervised home release program, which he entered in March of that year. The defendant maintained that the commissioner's custodial authority over him during that time period precluded the defendant from simultaneously completing the five year probationary period ordered in September, 1985. The defendant argued, therefore, that because he was not on probation, the court could not find him to be in violation of probation. As authority for his claim, the defendant relied on *State v. Deptula*, 34 Conn. App. 1, 639 A.2d 1049 (1994).

In denying the defendant's motion to dismiss, the court concluded that "[t]he probation ordered in 1985, which began on July 27, 1990, was not interrupted by his being sentenced and placed in custody on July 27, 1992. The defendant's contention that he could not be, at the same time, in custody on one sentence (that imposed on July 27, 1992) and also be on probation on another (that imposed in 1985) is unfounded. *Deptula*, does not hold otherwise." We agree. In *Deptula*, we held that a violation of probation may not be predicated on an act that took place during the custodial portion of a sentence, and *prior* to the commencement of the probationary period. In the present case, the probationary period clearly commenced on July 27, 1990. The

sole issue for our determination, unlike the issue presented in *Deptula*, is whether the defendant's probationary period was interrupted. The defendant's argument that he could not be concurrently in custody and on probation is unavailing under the particular circumstances in this case.

On appeal, the defendant claims that the trial court improperly denied his motion to dismiss because on July 27, 1992, the court, *Stanley, J.*, modified the original term of probation by suspending the defendant's probation while he served his sentence on the other two dockets. In attempting to substantiate that the trial court suspended his probation, the defendant recites the court's order that the defendant "is to remain on probation once he is released under the original terms and conditions." The defendant argues that the court's order is unambiguous and a literal reading of the court's sentencing reveals that the court did not state that the defendant would *continue* on probation under the original terms and conditions. The defendant maintains that an examination of the exact wording used by the court in sentencing the defendant leads to the singular, logical conclusion that the commencement of his probation could be triggered only by his release from incarceration. Because the defendant remained within the jurisdiction of the commissioner during the months of October and November, 1993, the defendant concludes that his probation was never reactivated.

We decline to adopt the defendant's forced, literal interpretation of the court's order on July 27, 1992. The court's omission of the word "continued," stressed as determinative by the defendant, loses significance when we consider the court's omission of the words "suspended" and "tolled." Moreover, a thorough review of the entire July, 1992 sentencing proceeding before Judge Stanley reveals that all of the parties concerned clearly articulated and comprehended that the defend-

ant's probation would be continued during his five year incarceration period. The transcript of the sentencing proceedings discloses that the state's attorney specifically recommended that the defendant be continued on probation during his incarceration, and the defendant's attorney explicitly agreed to that recommendation. The court, seeking to ascertain whether the defendant fully understood the agreed upon recommendation, asked the defendant whether he comprehended that his sentence was "[f]ive years to do, and being *continued* on probation, same terms and conditions?" (Emphasis added.) The defendant responded affirmatively. It is clear from the transcript that the defendant's emphasis on the literal meaning of Judge Stanley's order, taken out of context from the entire proceeding, is misplaced. The record demonstrates the clear intent and the understanding of the parties involved, including the defendant, that his probation be continued.

A review of the pertinent statutes serves to further refute the defendant's contention that the trial court acted to suspend his probation. "Probation is the product of statute. See General Statutes § 53a-28 et seq." *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988). General Statutes § 53a-31 (a) provides that a period of probation commences on the day it is imposed, except that, where it is preceded by a sentence of imprisonment with execution suspended after a period of imprisonment set by the court, it commences on the day the defendant is released from such imprisonment. The statute is devoid of any mention of a court's power to suspend or toll a period of probation once the probationary period has begun. General Statutes § 53a-32 (b)[3]

---

[3] General Statutes § 53a-32 (b) provides: "If such violation is established, the court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation should be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

allows the court, following the determination of a violation of probation, to continue or revoke the sentence of probation or to modify or enlarge the conditions. This statute clearly delineates the list of permissible adjustments that a trial court is authorized to impose when amending a defendant's probation. Upon a finding of a violation, the statute affords a trial court only two choices: either to continue or to revoke the probation. Conspicuously absent from this legislative list is the power to suspend or toll a probationary period. The statute's use of the words "modify" and "enlarge" speaks exclusively to the conditions of the probation. No statutory authority exists to extend a period of probation. *State* v. *Guckian*, 27 Conn. App. 225, 246–47, 605 A.2d 874 (1992), aff'd, 226 Conn. 191, 627 A.2d 407 (1993). We also find no statutory authority to suspend probation once a violation of probation has been determined.

On July 27, 1992, the defendant admitted to being in violation of his probation. Pursuant to § 53a-32 (b) and the plea agreement, Judge Stanley chose to continue rather than to revoke the defendant's probation. The defendant's probationary period commenced on July 27, 1990, by operation of law, and would continue for five years, terminating in 1995. The trial court, *Parker, J.*, properly determined that the court, *Stanley, J.*, on July 27, 1992, "could not mean that the 1985 probation was to be suspended during the custodial portion of the five year sentence just imposed . . . . There is no statute which permits suspension of probation for a period of time with it to recommence after a period of suspension."

Given the lack of statutory authority to suspend or toll a probationary period, it is difficult, if not impossible, to surmise, as the defendant does, that Judge Stanley unilaterally took the unprecedented action of suspending the defendant's probation. Under the circum-

stances of this case, as well as the record in the trial court, there is no evidence before this court to support the notion that Judge Stanley ignored the law, or blatantly disregarded it.

The defendant argues that in July, 1992, pursuant to General Statutes § 53a-30 (c), the court acted within its supervisory powers in suspending the defendant's probationary term until he was released from serving the five year term imposed. We find the defendant's interpretation of § 53a-30 (c) to be distorted and contrived. The language of the statute is straightforward and does not confer supervisory powers on the court to suspend a term of probation. General Statutes § 53a-30 pertains to the authority of the court to set the conditions and requirements of probation and conditional discharge. Section 53a-30 (c) specifically addresses the court's power, after a hearing and for good cause shown, to modify or enlarge the *conditions* of probation, or to extend a probationary period. This section of the statute is inapplicable to the facts of this case. At the July, 1992 sentencing hearing, the defendant pleaded guilty to the violation of probation charge. The issue posed by the defendant centers on what action the court took as a result of this violation, and not on the conditions of his probation. The defendant has raised no issues concerning the conditions of his probation. General Statutes § 53a-32, entitled: "Violation of probation or conditional discharge: Arrest; procedure," is the relevant statute for a proper resolution of this case. The defendant's reliance on § 53a-30 (c) for the proposition that the trial court suspended his probation is without merit.

The defendant refers to General Statutes § 53a-31 (b)[4] as further support for his assertion that the court

[4] General Statutes § 53a-31 (b) provides: "Issuance of a warrant or notice to appear for violation pursuant to section 53a-32, shall interrupt the period of the sentence as of the date of such issuance until a final determination as to the violation has been made by the court."

suspended his probation. The defendant argues that § 53a-31 (b) allows for an interruption of the probationary term until the court imposes its sentence. The defendant claims that the court did not enlarge the original sentence, but rather suspended the uncompleted portion of the defendant's remaining probationary period until after his release.

A violation brought pursuant to § 53a-32 interrupts the period of the sentence as of the date of the issuance of the warrant or notice to appear only until a final determination as to the violation has been made by the court. Once the trial court determined a violation of probation on July 27, 1992, there was no statutory authorization for interruption of the probationary period.

On the basis of our review of the July 27, 1992 sentencing proceeding and the pertinent statutes, we conclude that the trial court properly denied the defendant's motion to dismiss.

## II

The defendant next claims that the evidence was insufficient for the trial court to find the defendant in violation of his probation. We need not, at this time, discuss our standard of review or the standard of proof applicable to a finding of a violation of probation. The parties agree, as do we from our review of the record, that the only true contested issue before us is whether the trial court properly determined that the defendant was actually on probation during the months of October and November, 1993, when he committed the crimes on which the alleged violation was based. The record, as discussed in part I, leads us to conclude that the evidence presented was sufficient to establish that the defendant was on probation during that period of time, and that he violated that probation.

## III

The defendant claims that the trial court improperly allowed him to waive his right to counsel and to represent himself with standby counsel. Certain additional facts are necessary for a proper resolution of this issue.

The defendant was represented by a public defender. On June 17, 1994, the defendant renewed his motion to dismiss the public defender and to allow the defendant to represent himself pro se.[5] The court denied the motion.

On August 1, 1994, prior to the start of the hearings on the motion to dismiss the information and the violation of probation charge, the defendant requested that he be allowed to represent himself. The defendant based this request, as he based his previous two requests to represent himself, on his disagreement with the public defender regarding whether he was on probation during the months of October and November, 1993, and, hence, subject to charges of violation of probation. Judge Parker read to the defendant § 961 of the rules of practice concerning waiver of the right to counsel and proceeded to conduct the four-pronged examination required by that rule.[6] After a comprehensive can-

[5] See footnote 2.

[6] Practice Book § 961 provides: "A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

vassing of the defendant, the trial court concluded that each of the four conditions required by § 961 were satisfied and, therefore, granted the defendant's motion to represent himself. The court directed that the public defender stay in attendance and be available for consultation if the court deemed his assistance necessary. The court then heard the defendant's arguments in favor of his motion to dismiss the violation of probation charges. Following the denial of the defendant's pro se motion, the court conducted an evidentiary hearing and found the defendant to be in violation of his probation. The court then granted the defendant's request to allow the public defender to resume his duties as counsel for purposes of the sentencing proceeding.

A criminal defendant has the right to appear pro se in a state criminal trial when he voluntarily and intelligently elects to do so, and has a constitutional right to represent himself at a violation of probation hearing upon an effective waiver of the right to the assistance of counsel. *State* v. *Smith*, 18 Conn. App. 368, 373, 558 A.2d 257 (1989). "When a defendant is deciding whether to appear pro se or with a lawyer, it is vital for the trial court to satisfy itself that the defendant, if he or she chooses to appear pro se, is fully aware of the risks involved and makes the choice knowingly." Id.; see also *State* v. *Gethers*, 197 Conn. 369, 376, 497 A.2d 408 (1985); *State* v. *Varricchio*, 10 Conn. App. 265, 268, 522 A.2d 843 (1987). "Our role as a reviewing court is to determine whether at any point in the proceedings the defendant effectively waived his right to counsel." *State* v. *Varricchio*, supra, 269.

The defendant argues that the second and third inquiries required by § 961 did not yield responses from him that satisfied the requirements for a proper waiver of counsel. With respect to § 961 (2), the defendant asserts that he was not trained in the law, had received

his general equivalency diploma while incarcerated, and lacked the intelligence and the capacity to make an informed choice. Regarding § 961 (3), the defendant claims that while he may have had some understanding of the nature of the motion to dismiss proceedings, he lacked comprehension of what a violation of probation proceeding entailed. Moreover, the defendant states that the court failed entirely to present to him the fourth query required by § 961. He claims that the trial court relied on the public defender's statement that he had informed the defendant of the dangers of self-representation, rather than the court's being assured through its own direct inquiry of the defendant that he had been so advised.

Our review of the record leads us to conclude that the trial court substantially complied with the provisions of § 961. The record also amply demonstrates that the court properly determined that each of the four requirements of § 961 was met, including that the defendant possessed the intelligence and capacity to appreciate the consequences of the decision to represent himself, and that he comprehended the nature of the charges and proceedings and the dangers and disadvantages associated with self-representation. Moreover, the trial court insisted that standby counsel be present during all proceedings and be prepared to assist and take over if necessary. The defendant was aware that he could avail himself of the assistance of counsel, and the record discloses that he in fact did freely discuss with, and receive assistance from, standby counsel.

The judgment is affirmed.

In this opinion the other judges concurred.